IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

LUDIBINA ABREGO,                                         6:13-cv-01007-MA

            Plaintiff,                            OPINION AND ORDER

    v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

           Defendant.

MAX RAE
P.O. Box 7790
Salem, Oregon 97303

ALAN STUART GRAF
208 Pine Street
Floyd, Virginia 24091

    Attorneys for Plaintiff

S. AMANDA MARSHALL
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204-2902

///

///

///

1 - OPINION AND ORDER

LISA GOLDOFTAS
MATHEW W. PILE
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, Washington 98104-7075

    Attorneys for Defendant

MARSH, Judge

Plaintiff, Ludibina Abrego, brings this action for judicial review of a final decision of the Commissioner of Social Security (the Commissioner) denying her applications for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act) and supplemental security income (SSI) disability benefits under Title XVI of the Act. See 42 U.S.C. §§ 401-434, 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). For the reasons set forth below, I reverse the final decision of the Commissioner and remand for an immediate calculation of benefits.

## PROCEDURAL BACKGROUND

Plaintiff protectively filed the instant applications for DIB and SSI on April 17, 2009, alleging disability due to chronic pain, depression, fibromyalgia, sleep apnea, narcolepsy, and hearing loss. Tr. 190. Her applications were denied initially and upon reconsideration. An Administrative Law Judge (ALJ) held a hearing on April 1, 2011, at which Plaintiff was represented by counsel and testified.

On April 12, 2011, the ALJ issued a decision finding Plaintiff not disabled within the meaning of the Act and on April 30, 2013, the Appeals Council declined review of the ALJ's decision. Tr. 1-4, 19-32. On May 24, 2013, Plaintiff filed another application for DIB. On June 14, 2013, Plaintiff timely filed a Complaint in this Court seeking review of the ALJ's determination concerning the prior application. On September 17, 2013, the Commissioner approved Plaintiff's second application for DIB and found Plaintiff disabled beginning April 13, 2011 – the day after the ALJ's decision concerning the prior application.

## FACTUAL BACKGROUND

Born on September 4, 1961, Plaintiff was 46 years old on the alleged onset date of disability and 49 years old on the date of the hearing. Tr. 221. Plaintiff has a high-school degree with some post-high school education and past relevant work as Licensing Clerk and Home Attendant. Tr. 68, 196.

Plaintiff initially alleged her conditions became disabling on March 1, 2005, but later amended her alleged onset date to September 24, 2007. Tr. 159, 190. Plaintiff testified about her conditions and functional limitations at the hearing and submitted an Adult Function Report. Tr. 42-68, 198-207. In addition, Plaintiff's sister, Veronica Abrego, submitted a Third Party Function Report. Tr. 210-17. Plaintiff's son, Joshua Hart, also

submitted a letter in support of Plaintiff's application. Tr. 431-32.

The record contains multiple medical evaluations and opinions. On September 30, 2003, Leslie Pitchford, Ph.D., completed a psychological evaluation to assess Plaintiff's level of memory functioning. Tr. 518-22. On November 15, 2010, Plaintiff's treating physician Cynthia Nocek, M.D., completed a Medical Source Statement as to Plaintiff's physical and mental limitations. Tr. 836-40. On October 2, 2009, Neal E. Berner, M.D., reviewed Plaintiff's medical records and submitted a Physical Residual Functional Capacity Assessment. Tr. 727-34. On October 5, 2009, Megan D. Nicoloff, Psy.D., reviewed Plaintiff's records and submitted a Mental Residual Functional Capacity Assessment. Tr. 749-51. In addition, the record contains several statements from Anne Wild, M.D., Howard Gandler, M.D., and Scott E. Wagnon, PA-C, concerning Plaintiff's employment before the alleged onset date of disability. Tr. 708-09, 885-96.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). Each step is potentially dispositive. The claimant bears the burden of proof at Steps One through Four. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999). The burden shifts to the Commissioner at Step Five to

show that a significant number of jobs exist in the national economy that the claimant can perform. See Yuckert, 482 U.S. at 141-42; Tackett, 180 F.3d at 1098.

At Step One, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since the alleged onset date, September 24, 2007. See 20 C.F.R. §§ 404.1571 et seq., 416.971 et seq.; Tr. 21.

At Step Two, the ALJ found Claimant's fibromyalgia and depression are severe impairments. See 20 C.F.R. §§ 404.1520(c), 416.920(c); Tr. 21-22.

At Step Three, the ALJ determined that Claimant does not have an impairment or combination of impairments that meet or medically equal any listed impairment. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926; Tr. 22-23.

The ALJ found Claimant had the residual functional capacity (RFC) to perform less than a full range of light work with limitations to lifting 20 pounds occasionally and 10 pounds frequently; standing, walking, and sitting six out of eight hours in each workday, respectively; avoiding concentrated exposure to noise and hazards, such as machinery and heights; understanding and remembering simple, routine instructions and procedures, but not more complex instructions; sustaining attention sufficiently to complete only simple instructions and procedures, but not more complex tasks; and having no public contact. Tr. 23-31.

At Step Four, the ALJ found Claimant unable to perform any past relevant work. See 20 C.F.R. §§ 404.1565, 416.965; Tr. 31.

At Step Five, the ALJ found that Claimant could perform jobs that exist in significant numbers in the national economy including Office Helper, Postage Machine Operator, and Electronic Worker. See 20 C.F.R. §§ 404.1569, 404.1569a, 416.969, 416.969a; Tr. 31-32.

Accordingly, the ALJ found Claimant not disabled within the meaning of the Act.

## ISSUES ON REVIEW

Plaintiff raises four primary issues on appeal. First, Plaintiff argues the ALJ improperly rejected her testimony. Second, Plaintiff maintains the ALJ improperly weighed medical testimony from Dr. Nocek, Dr. Wild, Dr. Gandler, Mr. Wagnon, and a Global Assessment of Functioning score of 47 from Joel Suckow, M.D. Third, Plaintiff submits the ALJ erred in not discussing a disability benefit confirmation letter from the Oregon Public Employees Retirement System. Tr. 166. Finally, Plaintiff asserts the ALJ erroneously rejected the lay testimony of Plaintiff's sister, Veronica Abrego, and Plaintiff's son, Joshua Hart.

## STANDARD OF REVIEW

The Court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

"Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. The Court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). If the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld. Andrews, 53 F.3d at 1039-40. If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001).

## DISCUSSION

### I. Plaintiff's Testimony

Plaintiff first argues the ALJ cited legally insufficient reasons to reject her testimony. In deciding whether to accept subjective symptom testimony, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. First, the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996). Second, absent a finding of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear, and convincing reasons for doing so. Id. at 1281. The

7 - OPINION AND ORDER

ALJ's reasons for rejecting a claimant's testimony must be supported by substantial evidence in the record. See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008).

If an ALJ finds the claimant's testimony regarding her subjective symptoms unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive." Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). In doing so, the ALJ must identify which testimony is credible and which testimony undermines the claimant's complaints, and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit [the] claimant's testimony." Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002). The ALJ may rely upon ordinary techniques of credibility evaluation in weighing the claimant's credibility. Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).

At the hearing, Plaintiff testified that her primary impediment to employment was a sleep condition that makes it difficult to start work early in the day and causes her to experience fatigue that limits her to fifteen-to-twenty minutes of activity at a time and to rest for four hours per day. Tr. 49, 59-60. Plaintiff reported frequently falling asleep at her previous job. Tr. 58. As to her productivity at work, Plaintiff reported it was worse in the afternoons because her pain and body aches would worsen. Tr. 58. Plaintiff reported that her mental health

8 - OPINION AND ORDER

conditions cause her to experience concentration and memory problems. Tr. 57.

On a typical day, Plaintiff testified she wakes up between 9:30 and 10:00 a.m., takes two hours to get ready for the day, and works on paperwork and pays bills before eating lunch around 1:00 or 2:00 in the afternoon. Tr. 53-55. After lunch, Plaintiff reported that she rests before doing household chores in the afternoon. Plaintiff reported eating dinner between 6:00 and 7:00 p.m. before going to bed around 10:00. Tr. 56. Plaintiff testified that she watches her grandchildren every other weekend and occasionally goes to their school conferences. Tr. 51-52. Plaintiff reported that she cooks simple meals, can shop for herself, puts dishes in the dishwasher, and does laundry. Tr. 52-53.

In her Adult Function Report, Plaintiff reported similar symptoms and daily activities in greater detail. Tr. 198-203, 205. Plaintiff checked that her conditions affect her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, see, remember, complete tasks, concentrate, understand, follow instructions, and use her hands. Tr. 203. As to lifting, Plaintiff reported she can only lift five pounds. Tr. 203. Plaintiff reported she can walk for five minutes before needing between one and three minutes of rest. Tr. 203. Plaintiff noted that she could only pay attention for five-to-ten minutes and does

9 - OPINION AND ORDER

not follow written or spoken instructions well as a result of confusion and poor memory. Tr. 203. Plaintiff reported that her pain increases while under stress to the point where she can "barely talk." Tr. 204.

In a Pain and Fatigue Questionnaire, Plaintiff reported pain throughout her body that aches all day and wakes her up at night. Tr. 208. Plaintiff noted that this pain in somewhat alleviated by stretching, pain relievers, and massage. Tr. 208. As to fatigue, Plaintiff noted that she must rest between tasks approximately four-to-five times per day, and that she can only be active for between 30 minutes and one hour before requiring rest. Tr. 208.

The ALJ rejected Plaintiff's testimony because Plaintiff's "daily activities are quite involved," Plaintiff worked after the alleged onset date of disability, made statements to treating providers that call into question her motivation to work, has a criminal history, made inconsistent statements throughout the record, and has not been fully compliant with medical treatment. Tr. 27-28. I conclude these reasons are not clear and convincing reasons, supported by substantial record evidence, to reject Plaintiff's testimony.

I find no significant inconsistency between Plaintiff's activities of daily living and her testimony of disabling limitations and pain. While the ALJ noted that Plaintiff engages in a variety of basic activities around her home, such testimony

10 - OPINION AND ORDER

was accompanied by the qualification that Plaintiff takes frequent rest breaks and is limited in the amount she can do in a day. E.g., Tr. 59-60, 205, 208. Similarly, Plaintiff's reports that she watches her grandchildren on some weekends and maintains a romantic relationship with her boyfriend are not inconsistent with her testimony that pain and fatigue preclude her from performing full-time work. Accordingly, I conclude the ALJ improperly cited activities of daily living inconsistent with disabling limitations to reject Plaintiff's testimony.

The ALJ's rejection of Plaintiff's testimony because she performed some work after the alleged onset date is also unconvincing. While the record does indicate Plaintiff received $6,414.90 in compensation for serving as a caretaker for her father in 2008, Plaintiff testified that the activity level involved in that work was very limited and that she performed only 20 to 30 hours of work per month. Tr. 65-67, 154. Such work is not inconsistent with Plaintiff's allegations of disabling limitations on account of fatigue and her inability to sustain activity.

The ALJ next rejected Plaintiff's testimony because she made statements to treatment providers that "bring into question the claimant's motivation to work." Tr. 27. The only statement the ALJ referenced in support of this reason is a statement to Dr. Suckow that Plaintiff's "[c]urrent source of income is unemployment, not sure if [she] will resume working." Tr. 777.

11 - OPINION AND ORDER

This statement lends little support to the ALJ's rationale, however, and a review of the record reveals little other evidence demonstrating that Plaintiff lacked motivation to return to work.

The ALJ also cited Plaintiff's criminal history as a reason to reject her testimony. The only reference to a criminal history in the record is a 2008 citation for driving under the influence of intoxicants in which Plaintiff denied that she had consumed sufficient alcohol to become intoxicated, but that more moderate alcohol use in combination with her prescription medication caused the citation. Tr. 777. Although the ALJ found this inconsistent with Plaintiff's testimony that she only leaves her home to shop for food or go to appointments, I note Plaintiff also testified she "occasionally" goes out with others. Tr. 60. There is no evidence in the record that Plaintiff's description of her citation was inaccurate. Plaintiff's relatively minor criminal history is not a convincing reason to reject Plaintiff's testimony as to her physical and mental limitations.[1]

The ALJ's most convincing reasons for rejecting Plaintiff's testimony were his citations to some inconsistencies noted by Dr. Suckow and a few instances of noncompliance or failure to pursue medical treatment. Indeed, on December 9, 2009, Dr. Suckow noted

---

[1] The ALJ also noted some record references to marijuana use. At most, the record contains a few passing references to occasional marijuana use in Plaintiff's past. See Tr. 786. This is not a convincing reason to reject Plaintiff's testimony.

that Plaintiff's statements about memory problems appeared inconsistent with her ability to recall facts about her disability application and medications and that Plaintiff's full-body pain allegations were not accompanied by any difficulty with movements or gait. Tr. 828. Dr. Suckow also noted that Plaintiff turned down some mental health treatment options in favor of medication management and opined that Plaintiff was not "fully vested" in addressing her mental health issues. Tr. 828, 881. In addition, the ALJ noted that Plaintiff failed to appear at a relatively small number of mental health appointments and failed to timely fill out a form for financial assistance with medical costs. See Tr. 771, 776, 788, 829.

Nonetheless, while I find the ALJ reasonably cited these reasons, the instances of noncompliance and inconsistencies are relatively few in the context of an extensive medical record. Notably, a sizeable majority of Plaintiff's treatment providers did not note such instances. Accordingly, while I find the ALJ did not err in citing these reasons, they do not rise to the level of clear and convincing reasons to reject Plaintiff's testimony. In sum, the majority of the ALJ's reasons for rejecting Plaintiff's testimony were either unsupported by the record or unconvincing. While the ALJ cited some proper reasons for discrediting Plaintiff's testimony, in light of the record as a whole those reasons do not amount to clear and convincing reasons to reject

13 - OPINION AND ORDER

Plaintiff's testimony. Therefore, I conclude the ALJ improperly rejected Plaintiff's testimony.

## II. Credit-as-True

When the ALJ erroneously rejects testimony, the court must remand for a calculation of benefits if:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison v. Colvin, ___ F.3d ___, 2014 WL 3397218, at *20 (9th Cir. Jul. 14, 2014). If those three criteria are met, the court may only remand for further proceedings if "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at *21.

Here, the record has been fully developed and, as discussed above, the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony. In addition, it is clear from the record that the ALJ would be required to find Plaintiff disabled if her testimony was credited-as-true. For example, Plaintiff testified that she can only sustain continuous activity for 15 to 20 minutes before requiring rest. Tr. 59-60. The VE testified that a person would have to work a standard work schedule, with two hours between breaks, to maintain a job. Tr. 72. Thus, crediting

Plaintiff's testimony as true, the VE's testimony demonstrates that Plaintiff is unable to maintain employment. Therefore, the three credit-as-true criteria are met.

On this record, I have no reason to have serious doubts that Plaintiff is disabled within the meaning of the Act, especially in light of the fact that the Commissioner has since found Plaintiff disabled. Accordingly, this case must be remanded to the Commissioner for an immediate calculation of benefits pursuant to sentence four of 42 U.S.C. § 405(g).[2]

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and this case is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for an immediate calculation of benefits.

IT IS SO ORDERED.

DATED this **27** day of August, 2014.

*Malcolm F. Marsh*
Malcolm F. Marsh
United States District Judge

---

[2] Because the ALJ's erroneous rejection of Plaintiff's testimony necessitates remand for an immediate payment of benefits, I need not reach Plaintiff's other assignments of error.